# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRIS MCCUMBER** | **CIVIL ACTION NO. 09-1000** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **EYE CARE CENTERS OF AMERICA, INC.** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court are three (3) motions for partial summary judgment. The first motion, filed by plaintiff Chris McCumber ("Plaintiff"), seeks summary judgment as to certain enumerated affirmative defenses contained in the answer filed by defendant Eye Care Centers of America, Inc. ("ECCA").[1]   The second motion, filed by ECCA and joined by recently-added defendant EyeMasters, Inc. ("EyeMasters"), seeks summary judgment concerning the method used to calculate any alleged unpaid overtime, plaintiff's claim for willful and reckless violation of the FLSA and plaintiff's claim for violation of the Louisiana Wage Payment Act.[2]  The third motion, also filed by ECCA and joined by EyeMasters, seeks summary judgment as to the remainder of plaintiff's claims on the basis that plaintiff was an exempt employee within the meaning of the Fair Labor Standards Act.[3]

For the reasons expressed herein, the court finds that plaintiff's motion should be GRANTED

---

[1]R. 23.

[2]R. 25.

[3]R. 38.

in part and DENIED in part and that ECCA's two motions should GRANTED in part and DENIED in part.

## I.      BACKGROUND

### A.      Relevant Facts

Plaintiff filed the above-captioned suit against ECCA on November 24, 2009, alleging that he was employed by ECCA from October 2005 until October 22, 2009 as a District Technical Manager and that, during his employment, ECCA violated the Fair Labor Standards Act ("FLSA")[4] by failing to pay him for overtime worked and failing to keep adequate records of the hours he worked.[5] Plaintiff further alleges that ECCA's violations of the FLSA were willful and intentional.[6] Additionally, plaintiff alleges that ECCA's actions violated La. R.S. 23:631, et seq., known as the Louisiana Wage Payment Act ("LWPA"), entitling him to unpaid wages, penalty wages, interest and attorney fees.

ECCA timely answered plaintiff's suit, denying that it acted in violation of the FLSA or the LWPA and further asserting the affirmative defenses of estoppel, waiver, unclean hands, federal and state prescription of claims.[7] ECCA pleads good faith and further asserts that plaintiff was an exempt employee within the meaning of the FLSA.[8]

---

[4] 29 U.S.C. § 201, et seq.

[5] R. 1

[6] Id.

[7] R. 11.

[8] Id.

Plaintiff sought and was granted leave of court to amend his complaint to add Eyemasters, Inc. ("Eyemasters") as a defendant, alleging that Eyemasters, a wholly-owned subsidiary of ECCA, was a joint employer with ECCA under the FLSA.[9] ECCA denies that it was the joint employer of plaintiff and asserts that Eyemasters was plaintiff's sole employer under the FLSA.[10] EyeMasters filed its answer to plaintiff's suit on April 19, 2011, asserting the same affirmative defenses as pled by ECCA and, thereafter, was granted leave to join ECCA as a joint movant for summary judgment under ECCA's pending motions.[11]

### B.  Applicable Standard

Fed. R. Civ. P. 56, as recently amended,[12] provides that

> [a] party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[13]

When faced with a motion for summary judgment, a non-moving party may not rest on the

---

[9] R. 60, 61.

[10] R. 59 at ¶ 6.

[11] R. 25, 38.

[12] The court notes that two (2) of the pending motions, R. 23 and R. 25, were filed prior to the December 1, 2010 effective date of Rule 56's most recent amendment, while the third pending motion was filed after such effective date. This is a distinction without difference, however, as the advisory comments to the amendment clearly state that "[t]he standard for granting summary judgment remains unchanged" and that the amendment does not "affect continuing development of the decisional law construing and applying" the Rule.

[13] Fed. R. Civ. P. 56(a).

allegations of the pleadings.[14]   Once the moving party meets its initial burden of proof by demonstrating the absence of a genuine dispute as to any material fact for trial, the nonmoving party must designate specific facts showing that one or more triable issues remain, which, if decided in the non-moving party's favor, would entitle him to relief under the law.[15]  If the nonmoving party fails to satisfy this burden, the court must enter summary judgment in favor of the movant if the record before it demonstrates that the movant is entitled to judgment as a matter of law.  If the nonmoving party is unable, for reasons specified by affidavit or declaration, to present facts necessary to justify its opposition to the motion, the court may defer ruling on the motion, deny the motion, grant additional time for the taking of discovery or issue any other appropriate order.[16]

In considering a motion for summary judgment, the court will view the evidence before it in the light most favorable to the nonmoving party, but will not infer proof of facts not properly alleged and supported.[17]  Evidence presented in support of or in opposition to a motion for summary judgment must be of the sort that would admissible in evidence at the trial of the matter.[18]

---

[14]Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

[15]Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Matsushida, 475 U.S. at 586; Celotex, 477 U.S. at 323; Little, 37 F.3d at 1975.

[16]Fed. R. Civ. P. 56(d).

[17]Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996).

[18]Fed. R. Civ. P. 56(c)(2).

## II.    ANALYSIS

The FLSA was enacted by Congress in order to protect certain workers from substandard wages and excessive hours for the dual purpose of improving national health and well-being among those workers and ensuring the free flow of goods in interstate commerce.[19]    Subject to certain enumerated exceptions, Section 203(e)(1) provides that an "employee" is "any individual employed by an employer."[20]    Section 206 provides a minimum hourly wage applicable to those defined as employees.    Similarly, Section 207(a)(1) provides that employees "...engaged in commerce or in the production of goods for commerce,...or is employed in an enterprise engaged in commerce or in the production of goods for commerce..." shall be paid at a rate not less than one and one-half times the regular rate at which that employee is employed for each hour over forty (40) hours worked in any particular week.

### Waiver, Estoppel and Unclean Hands

Plaintiff's motion requests summary judgment as to certain enumerated affirmative defenses pled by ECCA in its answer.    Specifically, plaintiff argues that the defenses of estoppel, waiver and unclean hands are not valid defenses to claims under the FLSA.[21]

As argued by plaintiff, equitable estoppel is no defense to FLSA claims, even where the

---

[19]29 U.S.C. § 202; Brooklyn Sav. Bank v. O'Neill, 324 U.S. 687 at 706 n. 17 (1945) citing H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21 and 28.

[20]Although defendants' motion for summary judgment [R. 38] originally argued that plaintiff could not meet his burden of proving that ECCA was his employer under the FLSA based on its position that plaintiff was employed by EyeMasters and that plaintiff had erroneously failed to name EyeMasters in this suit, we note that defendants have withdrawn that argument voluntarily based on plaintiff's recent amended complaint, which adds EyeMasters as a second defendant.  R. 61, 64.

[21]R. 23 at pp. 3 - 5.

claimant has purposefully not reported overtime hours worked.[22] To allow the defense of equitable estoppel would permit the confecting of contracts which have as their purpose the goal of thwarting the FLSA.[23]

Similarly, in <u>Brooklyn Savings Bank v. O'Neill</u>,[24] the United States Supreme Court held that a signed waiver of an employee's right to liquidated damages under the FLSA was not valid because "...to allow waiver of statutory wages by agreement would nullify the purposes..." of the FLSA.[25] The court observed that the "same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages."[26]

Jurisprudence is less clear with respect to the doctrine of unclean hands in the context of FLSA suits. Plaintiff asserts that, because the doctrine of unclean hands is an equitable doctrine, it has no validity as a defense to plaintiff's claims, which are statutory in nature. The court is aware of no cases specifically forbidding application of this equitable doctrine, nor has plaintiff cited any such cases in support of its argument. While we agree that the relief sought in this case is statutory in nature, cases such as <u>McKennon v. Nashville Banner Publishing Company</u>[27] and <u>McGlothan v.</u>

---

[22]<u>Morrison v. Executive Aircraft Refinishing, Inc.</u>, 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005) <u>citing</u> <u>Burry v. Nat'l. Trailer Convoy, Inc.</u>, 338 F.2d 422, 426-27 (6th Cir. 1964) <u>and</u> <u>Handler v. Thrasher</u>, 191 F.2d 120, 123 (10th Cir. 1951).

[23]<u>Id.</u>

[24]324 U.S. 697 (1945).

[25]<u>Id.</u> at 707.

[26]<u>Id.</u>

[27]513 U.S. 352 (1995) (in the context of an ADEA claim, the defense of unclean hands is valid given its likeness to after-acquired evidence doctrine, although important policy objectives giving rise to laws such as Title VII and the ADEA prohibit a blanket ruling that unclean hands totally bar recovery in such cases where it may be proven).

Walmart Stores, Inc. [28] indicate that evidence of misconduct by plaintiff may be relevant to the remedies available to plaintiff in this case. We note that the defense of unclean hands was stricken by the district court in Kendrick v. Alternative Care, Inc., but find that the court based its ruling on insufficiency of pleading under Fed. R. Civ. P. 8, rather than the policy argument espoused here by plaintiff.[29] Our review of the record in this case indicates that defendants plead sufficient facts under Rule 8 to escape the striking of its unclean hands defense here. Specifically, citing the Declaration of Manuel Pigee, plaintiff's former supervisor, defendants allege that plaintiff was absent from his assigned tasks "on a number of occasions" and, for that reason, did not actually work more than forty (40) hours per week as his suit asserts.[30]

Given these findings, plaintiff's motion for summary judgment will be granted insofar as it pertains to defendants' affirmative defenses of waiver and estoppel, but will be denied as to defendants' affirmative defense of unclean hands.

### Executive Exemption

The executive exemption, found at 29 U.S.C. § 213(a)(1), provides that the provisions of Sections 206 and 207 of the FLSA, providing for minium wage and maximum hours shall not apply to any employee in a "bona fide executive, administrative, or professional capacity..." 29 C.F.R. § 541.100, defining the executive exemption, provides that

---

[28] 2006 WL 1679592 (M.D. Fla. 2006) (citing the U.S. Supreme Court's ruling in McKennon, district court permitted advancement of defendant's unclean hands defense as to plaintiff's FLSA claims on the basis that evidence of plaintiff's misconduct is relevant to the issue of remedy and further found that defendant alleged sufficient facts to satisfy the notice pleading requirement of FRCP 8).

[29] 2006 WL 4756451 (M.D. Fla. 2006).

[30] R. 28 at pp. 8-9, citing "Exhibit C" thereto.

<table>
<tr><td>(a)</td><td colspan="2">[t]he term "employee in a bona fide executive capacity" in section 13(a)(1) of the [FLSA] shall mean any employee:</td></tr>
<tr><td></td><td>(1)</td><td>[c]ompensated on a salary basis at a rate of not less than $455 per week (or $380 per week if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;</td></tr>
<tr><td></td><td>(2)</td><td>[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;</td></tr>
<tr><td></td><td>(3)</td><td>[w]ho customarily and regularly directs the work of two or more other employees; and</td></tr>
<tr><td></td><td>(4)</td><td>[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.</td></tr>
</table>

As the employer, defendants bear the burden of demonstrating the applicability of any exemption under the FLSA.[31] Moreover, such exemptions are to be construed narrowly against the employer.[32]

Defendants' answers to this suit assert that, in his position as District Technical Manager, plaintiff was exempt from the wage and hour provisions of the FLSA under either the executive or

---

[31]Vela v. City of Houston, 276 F.3d 659, 666-67 (5th Cir. 2001) citing Heidtman v. County of El Paso, 171 F.3d 1038, 1042 (5th Cir. 1999); Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990) citing Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1966).

[32]Vela, 276 F.3d at 666-67 citing Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1137 (5th Cir. 1988); Dalheim, 918 F.2d at 206 citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960).

administrative exemption provisions or, alternatively, a combination of both exemptions.[33] Plaintiff's motion requests summary judgment in its favor as to defendants' exemption defenses.[34] Defendants have also filed for summary judgment in their favor based on the applicability of these exemption defenses.[35] For the sake of efficiency, we will treat these filings as cross-motions for summary judgment.

The court has carefully reviewed the law and evidence in this case, as well as the arguments made by the parties for and against summary judgment. We find, after such review, that genuine disputes as to material facts remain which preclude summary judgment in favor of either plaintiff or defendants as to the executive and administrative exclusions, as discussed below.

It is undisputed among the parties that plaintiff's compensation as a District Technical Manager met the $455 weekly threshold provided for in 29 C.F.R. § 541.100(a)(1).[36] Accordingly, we find no genuine dispute as to this first executive exemption factor.

As to the second factor, primary duty, the facts are considerably less clear. 29 C.F.R. 541.700 defines an employee's primary duty as the "principal, main, major or most important duty that the employee performs."[37] 29 C.F.R. § 541.102 defines "management" as, among other things,

_____

[33]R. 59, 68.

[34]R. 23 at pp. 5-8.

[35]R. 38.

[36]Plaintiff's supplemental responses to defendant's first set of interrogatories and requests for production [R. 28-5] at "Interrogatory No. 6" providing that "[p]laintiff estimates that he worked 45 hours per week and earned $42,000 per year for working 48 work weeks per year." Dividing plaintiff's annual salary by 52 weeks per year (accounting for paid vacation), plaintiff's compensation would be in excess of $800 per week.

[37]29 C.F.R. § 541.700(a).

"training of employees...directing the work of employees...appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status...disciplining employees...providing for the safety and security of the employees or the property."

Plaintiff's job description, although not determinative in this case, summarizes the duties of the District Technical Manager as providing

...supervisory, technical and training support to a select group of stores as well as provide Lab Manager support to a base location to include meeting all Lab Manager requirements...[38]

The written job description goes on to list, as the first essential responsibility of the job, as providing "technical support and training to assigned locations as initial contact person for inoperable equipment."[39]

Plaintiff offers his written statement of November 14, 2010, in which he professes that "the primary duty of [his] position was to manufacture prescription lenses for glasses."[40] Plaintiff's statement further professes that he estimates that he spent "over 80% of [his] work time manufacturing lenses, doing routine maintenance and repairs on machinery, and keeping the lab area clean and neat."[41]

Defendants argue that this statement is contradicted by plaintiff's own deposition testimony, given only a month later, in which he states that his

[m]ain duties were to help managers repair any equipment.

---

[38]R. 38-4.

[39]Id.

[40]R. 23-3 at ¶ 3.

[41]Id. at ¶ 4.

10

> If I couldn't talk them through it over the phone, sometimes
> I would have to go to the store and help them or show them
> how to do it. Training when it was possible...[42]

Defendants also point out that, when read an excerpt from his written job description, cited above, plaintiff verified that it sounded "about right."[43] Similarly, defendants point out that plaintiff testified that, when he was promoted to District Technical Manager, he understood the job to entail "[b]asically, if a lab went down and the lab manager couldn't fix it, I would go there and help them or fix it and show them how to fix it. Tasks of those nature."[44]

Plaintiff points out that, in addition to the testimony cited by defendants, he testified that the written job description, in some ways, did not accurately describe his work as District Technical Manager.[45] When asked to elaborate as to how his actual duties differed from those included in the job description, plaintiff stated that

> [a]ll depending on the situations, how things were at the time,
> obviously we were never – I was never staffed well enough to
> be able to get out to the stores to perform some of these duties
> that the sheet is saying that I was supposed to do. Mainly,
> you know, I was producing. I was producing jobs most of the
> time because we had to keep up with our productivity. And
> if I was out of the lab a lot, that left my lab short, only
> working with one full time, one part time. You get really
> busy. It's hard to get away.[46]

Plaintiff asserts that, contrary to what may be listed in his written job description, the reality

---

[42]R. 38-3 at 13:21-14:1.

[43]Id. at 64:13-19.

[44]Id. at 36:17-22.

[45]R. 38-3 at 63:4-7.

[46]Id. at 63:10-21.

of his employment as District Technical Manager is that he spent the vast majority of his time manufacturing lenses in the lab at his home store. Plaintiff asserts that this is "production" work and is not "management of the enterprise...or of a customarily recognized department or subdivision thereof" as required by the second factor of the executive exemption.[47]

Defendants assert that plaintiff is downplaying his managerial and supervisory roles for the benefit of this lawsuit. Defendants offer four (4) employee performance appraisals signed by plaintiff, along with a lab certification document, as evidence that his job description was accurate and that his primary duty was management as required under the executive exemption.[48] Defendants also assert that, pursuant to 29 C.F.R. § 541.703, plaintiff's work repairing and maintaining lab equipment should be deemed exempt work in this case because it is directly and closely related to his exempt tasks as enumerated in the written job description.[49] Defendants point out that "monitoring and adjusting machinery" is one of the exemplar tasks listed in the regulation.[50]

29 C.F.R. § 541.700(a) provides that, in assessing an employee's primary duty under exemptions to the FLSA, the following factors, though not exhaustive, should be considered:

>     (1)     the relative importance of the exempt duties as
>             compared with other types of duties;

---

[47] 29 C.F.R. § 541.100(a)(2).

[48] R. 38-5, 38-6.

[49] 29 C.F.R. § 541.703 provides, in part, that the "phrase 'directly and closely related' means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work. Thus, 'directly and closely related work' may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly...may also include monitoring and adjusting machinery."

[50] Id.

12

     (2)     the amount of time spent performing exempt
               work;

     (3)     the employee's relative freedom from direct
               supervision; and

     (4)     the relationship between the employee's salary
               and the wages paid to other employees for the
               kind of nonexempt work performed by the
               employee.

The evidence before the court, including plaintiff's own arguments, demonstrates that plaintiff's work repairing and maintaining lab equipment was more important than his work manufacturing lenses. Plaintiff, himself, asserts that "[g]lasses can be produced by employees who have not received annual performance reviews, but not when the lens making machines are broken."[51] The court also notes that, while other employees were trained to make eyeglasses, plaintiff argues that none of these employees could perform the kind of repair and maintenance work on lab equipment that he did, mostly because they lacked experience.[52]

The court finds that the evidence also demonstrates that plaintiff's work repairing and maintaining lab equipment, either in person or by telephone,[53] should be considered exempt work pursuant to 29 C.F.R. § 541.703 in this case. Plaintiff's testimony acknowledges that, to some extent, his job as District Technical Manager involved exempt managerial tasks, such as performance

---

[51]R. 50 at p. 7.

[52]Id. at pp. 9-10.

[53]When asked what he did when lab equipment in stores within his district broke, plaintiff testified that "[i]f I could not talk them through it over the phone, there was times where I would have to pick up in the middle of the day and drive to that store and help them fix it." R. 38-3 at 57:16-19.

reviews, ensuring labs met safety standards, as well as training and supervising lab employees.[54] Plaintiff's job description lists "[p]rovide technical support and training to assigned locations as initial contact person for inoperable equipment."[55] Accordingly, we find that plaintiff's work repairing and maintaining lab equipment, though manual labor that might generally be regarded as nonexempt work, will be considered exempt work in this case because of its close and direct relationship to plaintiff's other exempt work.

Plaintiff asserts, as cited above, that he spent "over 80% of his time manufacturing lenses, doing routine maintenance and repairs on machinery, and keeping the lab area neat and clean."[56] Although, as above, we find that maintenance and repair of machinery is exempt work in this case, there is no evidence of the apportionment of plaintiff's time as to these claimed tasks. Similarly, defendants offer no evidence that would enable the court to determine what proportion of plaintiff's time was devoted to lens manufacturing, which we view as nonexempt work, as opposed to time devoted to his exempt work.

Plaintiff alleges that he was closely supervised, while defendants argue that his own testimony, along with documentary evidence in the form of employee appraisals and lab inspection reports, confirms that he was relatively free from supervision and exercised his own discretion in performing the duties of his job. Plaintiff testified that his supervisor, Manuel Pigee, would not allow him to make visits to other stores without his permission.[57] Pigee's declaration, offered by

---

[54]R. 38-3 at 74:17-75:1; 82:21-25; 83:14-18; 97:5-20.

[55]R. 38-4.

[56]R. 23-3 at ¶ 4.

[57]R. 38-3 at 14:9-22.

14

defendants, states that

> [t]hough Mr. McCumber needed to inform me when he needed to leave his home store, it was up to Mr. McCumber as District Technical Manager to determine when his duties required him to go to the other stores in his district. It was also up to Mr. McCumber to decide when to schedule such visits.[58]

Pigee's declaration indicates that he instituted this policy in response to complaints from general managers at stores within plaintiff's district that he was not at their store when he had promised to be there.[59]

Plaintiff argues that he had to "go through two levels of management" in order to enact any decision about repairing lab machinery. Having reviewed the cited testimony, we reject this argument, as it is clear that plaintiff was referring to contacting Bill Yeager to get parts for such repairs.[60] Plaintiff also testified that, if he could not get them from Yeager, he would go directly to the vendor for parts.[61] This testimony reflects no supervisory interference, only the ordering of parts for repair.

As cited above, the parties do not dispute that plaintiff made approximately $42,000 per year as a District Technical Manager. Defendants offer the declarations of Andria Tovar, Director of Human Resources for ECCA, which state that the average hourly compensation for a lab technician in plaintiff's district was $10.50, while the maximum hourly compensation for such an employee was

---

[58]R. 28-3 at p. 2.

[59]Id. at p. 1.

[60]R. 50 at p. 8 citing R. 38-3 at 39, 57-60.

[61]Id.

15

$14.18.[62] Plaintiff argues that a comparison between his annual salary and that earned by lab technicians is inappropriate because such employees are unable to perform the maintenance and repairs on lab equipment he performs, which he argues constitutes nonexempt work. As above, we reject this argument and find that plaintiff's duties with respect to maintenance and repair are exempt tasks.[63] Accordingly, the only real nonexempt task performed by plaintiff is the manufacturing of lenses, which lab technicians did perform. We find, therefore, that it is appropriate to compare plaintiff's salary with that of lab technicians when considering this fourth primary duty factor. We also find that there is a significant pay differential between plaintiff's salary and that earned by nonexempt employees who also manufacture lenses.

Considering the evidence before the court as to the four primary duty factors found in 29 C.F.R. 541.700(a), the court finds that it is unable to determine what portion of plaintiff's time was spent on exempt work and to what degree plaintiff was supervised in his employment as District Technical Manager. Though we are able to conclude, due to the overwhelming evidence before us, that plaintiff's exempt work was more important than his nonexempt work and that he made a significantly higher salary than other employees performing the same type of nonexempt work, such findings are insufficient to enable the court to make a final primary duty determination. More specifically, the court concludes that the evidence before it as to the amount of time spent on exempt work and the degree of supervision imposed on plaintiff presents credibility questions due to the lack of documentary evidence on these issues and these credibility determinations may only be made by

---

[62]R. 28-2, R. 56-1.

[63]R. 50 at 9-10.

16

the jury in this case.[64]

Although, since the court is unable to make a determination as to plaintiff's primary duty, our analysis might end here, we will return to the remaining executive exemption factors out of an abundance of caution.

The third factor requires the employer to prove that the employee "customarily and regularly directed the work of two or more employees."[65] "Customarily and regularly" is defined as

> a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks.[66]

29 C.F.R. § 541.104 provides that "two or more other employees" means "two full-time employees or their equivalent." The regulation goes on to provide the example that "[o]ne full-time and two half-time employees...are equivalent to two full-time employees."

Plaintiff asserts that he spent the majority of his time at his home store and that the lab at that store only employed plaintiff, one full-time lab technician and one part-time lab technician.[67] Plaintiff also asserts that defendants offer no evidence that plaintiff "customarily and regularly" supervised any other employees within his district and, for that reason, defendants fail to carry their burden of proof with respect to this third executive exemption factor.

---

[64]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (instructing that the "weighing of evidence" is a jury function and should not be undertaken by the court in the context of a motion for summary judgment).

[65]29 C.F.R. § 541.100(a)(3).

[66]29 C.F.R. § 541.701.

[67]R. 50 at p. 10; R. 38-3 at 49:8-11.

17

Defendants assert that plaintiff supervised employees, not only in his home store, but also in the other stores within his district, both in person and by phone. Defendants make a vague reference to the employee performance appraisals and disciplinary write-up plaintiff admitted authoring as evidence that plaintiff did supervise employees outside of his home store.

The court finds the evidence as to this third factor to be inconclusive. Defendants offer documentary evidence, in the form of employee performance appraisals, signed by plaintiff as each employee's supervisor in 2008 and 2009.[68] There are four (4) such appraisals in evidence, all pertaining to employees at Store 201, plaintiff's home store.[69] Two are dated 2008 and two are dated 2009.[70] The names of the specific employees being evaluated have been redacted to protect their privacy.[71] The court does not find that these very few documents support the conclusion that plaintiff supervised two (2) or more employees.

We do find, however, that plaintiff's arguments and deposition testimony provide some support for such a conclusion. Plaintiff testified that his "[m]ain duties were to help lab managers repair any equipment."[72] Plaintiff also testified that he conducted performance reviews of lab employees, although he did not specify whether that was exclusive to his home store or extended to other lab employees within his district.[73] Plaintiff acknowledged writing at least one disciplinary

---

[68]R. 38-5.

[69]Id.; R. 38-3 at 14:2-12.

[70]Id.

[71]Id.

[72]R. 38-3 at 13:21-22.

[73]Id. at 74:17-75:1.

18

write-up on an employee named Chris Butler.[74]

Given the conflicting nature of these arguments and evidentiary offerings, the court is unable to determine whether or not plaintiff "customarily and regularly supervised the work of two or more other employees" as required under the third executive exemption factor. Although all the parties have offered evidence, upon which a reasonable jury might base a determination as to this issue, such a determination requires a credibility assessment which must be left to the jury in this case.

Plaintiff also argues that, as to the fourth executive exemption factor, there is no evidence that he had the authority to hire or fire any employee or that his recommendations concerning employee hiring, firing or advancement were afforded substantial weight. Defendants point to the Declaration of Manuel Pigee, in which he states that

> [h]ad Mr. McCumber raised any issues with Lab Managers or Lab Techs in his district, his opinion would have been given substantial weight by either me or by the General Manager, since as District Technical Manager he is in probably the best position to evaluate their abilities and their performance.[75]

Defendants also offer plaintiff's own testimony that he authored a disciplinary write-up for employee Chris Butler based on plaintiff's determination that he talked on his cell phone too much while on duty.[76] Plaintiff argues that Pigee's statement as to "what would have been" is insufficient because it doesn't reflect the reality of what actually occurred. Plaintiff also points out that, while he wrote up one employee, he was also prevented from writing up another employee because his

---

[74]Id. at 97:5-20.

[75]R. 28-3 at pp. 3-4.

[76]R. 38-3 at 97:5-20.

manager did not agree.[77]

The court finds that this conflicting evidence precludes summary judgment as to the fourth executive exemption factor. While the documentary evidence before the court does demonstrate some managerial discretion as to employment decisions regarding subordinates, plaintiff's own testimony, coupled with the relatively small number of such evidentiary documents, suggests that these instances may be, as plaintiff argues, isolated and uncommon.

As is evident from our findings as to each of the four executive exemption factors, the court finds that, although evidence has been produced which, if given particular weight by the fact-finder, would enable a reasonable jury to find that plaintiff was exempt or nonexempt in this case, such a finding necessarily involves credibility determinations which lie strictly within the province of the jury. Accordingly, we find that neither plaintiff's motion for summary judgment as to this exemption, nor that of defendants should be granted. The motions will, therefore, be denied as to the applicability of the executive exemption.

**Administrative Exemption**

The motions before the court next request summary judgment as to defendants' administrative exemption defense. 29 C.F.R. § 541.200 provides that

> (a)    [t]he term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
>     (1)    Compensated on a salary or fee basis at a rate of not less than $455 per week...
>
>     (2)    Whose primary duty is the performance of office or non-manual work directly related to the management or general business

---

[77] R. 38-3 at 100:7-101:10.

operations of the employer or the employer's customers; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

As above, the court has already determined that plaintiff was compensated well in excess of the $455 weekly threshold amount and, therefore, would meet the requirements of factor one.

29 C.F.R. § 541.201(a) provides that the phrase

"directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

Plaintiff again argues that the vast majority of his time was spent on the nonexempt tasks of lens manufacturing and lab machine maintenance and repair and that, as such, his primary duty was manual labor and was not directly related to management or general business operations. Plaintiff cites Dalheim v. KDFW-TV,[78] a 1990 ruling by the Fifth Circuit, in which the court, citing 29 C.F.R. § 541.201(b) and (c), observed that administrative operations include things such as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."[79] The court also observed that work may be "directly related" if it is of "substantial importance" to the business operations of the enterprise because it involves major assignments in conducting the operations of the business, or...affects business operations to a

[78] 918 F.2d 1220 (5th Cir. 1990).

[79] Id. at 1230.

substantial degree." Plaintiff asserts that his primary duties involved manufacturing or production of eyeglasses and that, pursuant to 29 C.F.R. § 541.201(a), such work is not within the administrative exemption.

Defendants argue that plaintiff's primary duty involves the "running or servicing of an aspect of the business – specifically the optical labs in multiple retail stores, and in ensuring that equipment is working properly and that employees are performing efficiently" pursuant to 29 C.F.R. § 541.201(a).[80] Defendants also point out that plaintiff was involved with quality control in the labs in his district as contemplated in subsection (b).[81]

Assuming, as we are bound, for the purpose of this motion, that plaintiff's assertion that he spent the vast majority of his time in manufacturing and production is true, we find defendants have failed to demonstrate satisfaction of this second administrative exemption factor, since such tasks would constitute nonexempt work.

We do find, however, that defendants have demonstrated that plaintiff used his discretion as to matters of significance when he determined how to best repair and maintain lab equipment. As argued by defendants, even though plaintiff asserts that he used professional manuals to accomplish these repairs and maintenance, the use of such manuals does not negate the exemption when, in order to utilize those manuals, a degree of specialized knowledge or skill is required.[82] Plaintiff testified that he received calls from lab managers at other stores concerning broken equipment and that he

---

[80]R. 38-2 at p. 13.

[81]Id.

[82]29 C.F.R. 541.704.

would talk them through a repair or would go to that lab and make the repair.[83] Plaintiff also argues that he possesses specialized experience and skill in such repairs and maintenance.[84] Accordingly, we find that defendants have demonstrated the fulfillment of the third administrative exemption factor in this case.

Finding, as above, that a genuine dispute remains as to the second administrative exemption factor, we also find that summary judgment should be denied as to such exemption. We similarly find that the outstanding issues of fact concerning the reality of plaintiff's work also make summary judgment under a combination exemption inappropriate in this case.

### Fluctuating Workweek Method

Defendants' motion for partial summary judgment[85] seeks judgment in its favor declaring that any wages found to be due plaintiff in this case shall be calculated using the fluctuating workweek method ("FWW method") pursuant to 29 C.F.R. § 778.114.[86] Subsection (a) of the provision at issue instructs that

> "[a]n employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many."

Under the FWW method, the amount of overtime owed to such an employee is paid at the

---

[83]R. 38-3 at pp. 58 - 60.

[84]R. 50 at pp. 7, 9-10.

[85]R. 25.

[86]R. 25-2 at pp. 4-6.

rate of one-half-time pay, rather than one-and-a-half-time pay. The reason for this is that, according to the salary agreement among the parties, all the hours worked by the employee have already been compensated at straight-time pay and, thus, these hours are only shortchanged by half-time pay, rather than completely uncompensated.[87]

In order to calculate the amount actually due under the FWW method, the fixed weekly salary is divided by the number of hours actually worked in a particular week. The resulting sum is the employee's "regular rate of pay." An employee found to be due overtime pay would be paid one half of the regular rate of pay for each hour of overtime worked in that particular week. While the regular rate of pay decreases as hours worked each week increase, the fixed salary must be sufficient such that the regular rate of pay never falls below the minimum wage requirement of 29 U.S.C. § 206(a)(1).

In addition to the requirement that the minimum wage requirement be sustained by the regular rate of pay calculation, the employer who has allegedly misclassified a position as exempt under the FLSA bears the burden of proving that there existed a "clear mutual understanding" among the employer and employee that the fixed weekly salary is compensation for the hours worked in any given workweek, no matter how few or many, in order to impose the FWW method for calculating overtime due.[88]

Defendants argue that "it is undisputed that [p]laintiff was classified as exempt under the FLSA and was paid a fixed salary of $40,000 per year, regardless of the hours he worked."[89]

---

[87] 29 C.F.R. § 778.114(b).

[88] 29 C.F.R. § 778.114(a).

[89] R. 25-2 at p. 5.

24

Defendants point to plaintiff's testimony that he was "usually paid a set amount in each paycheck" and "often worked before and more often after the time set on the schedule" as evidence that plaintiff and defendants were parties to a "clear mutual understanding" that his salary was fixed, despite his varying hours.[90]

The court has examined plaintiff's written statement, as cited by defendants, and finds that the citation offered by defendants quotes only a portion of plaintiff's statement. In its entirety, the passages cited by defendants reads

> 22. I was usually paid a set amount in each paycheck, plus production and other bonuses.
>
> 23. The weekly schedule made by the store manager was the minimum time I was expected to work. I often worked before and more often after the time set on the schedule when there were orders to fill or equipment to maintain or repair, or when I had to drive to one of the other labs in the district to repair or maintain equipment. I was also frequently called in to repair machinery on my days off.[91]

Plaintiff asserts that he was not party to a "clear mutual understanding" as is required for application of the FWW method. Plaintiff points out that, on at least two occasions, his biweekly paycheck was reduced by 8 hours so that he was paid for only 72 hours, though he is usually paid for 80 hours.[92] Plaintiff argues that, pursuant to 29 C.F.R. 778.114(c), the FWW method is inapplicable in the instant case because subsection (c) clearly instructs that the employer must pay

---

[90]R. 23-3 at ¶¶ 22, 23.

[91]Id.

[92]R. 31-5 at pp. 18-19 (ECCA000936 - 000937).

the salary agreed to by the parties even when the employee does not work the full number of hours scheduled.

Plaintiff further asserts that ECCA internal policies instruct general managers to assume a 40 hour workweek when scheduling various management personnel to work in their stores.[93] Plaintiff also points to the ECCA policy entitled "Work Schedules and Attendance," which states that "[t]he normal workweek will consist of forty hours. The normal workday will consist of eight hours of work with an unpaid meal period."[94] Plaintiff argues that these policies, as well as the documented deductions in his biweekly paychecks demonstrate that defendants expected plaintiff to work a minimum of 40 hours and, in the event he failed to do so and did not claim leave or other holiday to make up for the time, defendants expected not to pay him the full amount of his salary.

The court has reviewed the documentary evidence cited by plaintiff, as well as plaintiff's statement, cited by defendants and finds that defendants have failed to demonstrate that no genuine dispute exists as to the applicability of the FWW method in this case. In light of the documentary evidence produced by plaintiff, the court finds that plaintiff has demonstrated that, pursuant to 29 C.F.R. 778.114(c), the FWW method is inapplicable to the case at bar. More specifically, the court finds that the check summary documents offered by plaintiff demonstrate that, on two occasions (9/25/2009 and 10/9/2009), plaintiff failed to work the required 80 hours in a designated two-week period and did not claim any holiday or vacation to make up for the shortage in his hours and, accordingly, eight hours worth of pay was deducted from his salary.[95] Thus, no sincere argument

---

[93]R. 31-6 at p. 25 (ECCA000821).

[94]R. 31-7 at p. 1 (ECCA000793).

[95]R. 31-5 at pp. 18-19 (ECCA000936 - 000937).

may be made by defendants that its intention was to pay plaintiff a set salary regardless of the hours he worked in a given week, as required for application of the FWW method. On the contrary, the evidence before the court demonstrates defendants' expectation that plaintiff work a minimum of forty hours each week and that he would be compensated only for those hours he worked or for which he claimed holidays or vacation to which he was entitled. Defendants' motion will be denied as to its request for application of the FWW method in this case and, accordingly, any overtime found by the jury to be owed to plaintiff shall be compensated at the rate of one and one-half times the amount of plaintiff's regular hourly wage pursuant to 29 C.F.R. 541.207(a)(1).

### Plaintiff's Claims for Willful Violation of the FLSA

Defendants' motion next seeks summary judgment dismissing plaintiff's claims against defendants for willful violation of the FLSA, asserting that plaintiff has offered no evidence that demonstrates "'voluntary, deliberate or intentional'" conduct in knowingly or recklessly disregarding the provisions of the FLSA. As such, defendants argue that the two-year statute of limitations generally applicable to FLSA claims should apply here, rather than the extended three-year statute of limitations available for willful violations under 29 U.S.C. § 255(a).[96]

Defendants cite the written opinion letter provided to them by outside counsel in 2004 which states that counsel believed defendants "ha[d] a good faith basis for classifying Lab Managers as exempt."[97] Defendants assert that they implemented the suggestions of counsel in making changes to the Lab Manager job description.[98]

---

[96]R. 25-2 at pp. 6-9.

[97]R. 25-4 at pp. 3-6.

[98]R. 25-2 at p. 8.

Plaintiff argues that a thorough reading of the 2004 letter offered by defendants reveals that counsel warned defendants that, for purposes of the FLSA, the written job description is not controlling and, as such, defendants' reliance on the job description is not sufficient to foreclose the possibility of willful violation in this case.[99] Plaintiff also argues that, when asked to identify "'all efforts made by Defendant to ensure that Plaintiff was actually given the job duties and responsibilities listed in the job description,'" defendants responded that "'Plaintiff's supervisor had access to Plaintiff's job description and made regular visits to Plaintiff's store to ensure that Plaintiff was aware of and was performing his job duties.'"[100] Plaintiff asserts that this is also insufficient to foreclose the possibility of willful violation in this case in light of the warning issued to defendants in counsel's letter of 2004.

The court agrees with plaintiff that, although the letter from counsel is evidence of defendants' concern as to the exempt or nonexempt status of its managers under the FLSA, what matters for purposes of this case is what happened after the issuance of the letter, particularly with respect to plaintiff. Plaintiff has demonstrated that defendants were, by virtue of the 2004 letter, aware of the possibility that Lab Managers and, as defendants argue, by extension District Technical Managers, could be deemed nonexempt under certain circumstances. Plaintiff is correct in his argument that reliance on the advice of counsel does not foreclose the possibility that a violation is "willful."[101] The court has already found the existence of genuine disputes concerning the reality

---

[99]R. 31 at p. 8.

[100]Id. (internal citations omitted).

[101]Brennan v. General Motors Acceptance Corp., 482 F.2d 825 (5th Cir. 1973); Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1141-42 (5th Cir. 1971) cert. denied, 409 U.S. 948 (1972).

of plaintiff's employment in this case. We now also find that a resolution of these fact issues is determinative of the merits of plaintiff's claims for willful violation of the FLSA. Defendants have failed to demonstrate the absence of a genuine dispute which, if decided in plaintiff's favor, would enable a reasonable jury to find in favor of plaintiff on such claims and trigger the three-year statute of limitations applicable to such conduct pursuant to 29 U.S.C. § 255(a).

Accordingly, defendants' motion will be denied insofar as it requests summary judgment on plaintiff's claims for willful violation.

### Plaintiff's Claims Under the Louisiana Wage Payment Act

Defendants motion also seeks summary judgment dismissing plaintiff's claims under the Louisiana Wage Payment Act ("LWPA")[102] on the basis that this provision is not the appropriate mechanism for enforcement of FLSA claims.[103] Plaintiff argues that his claims under the LWPA are made in the alternative and that he does not seek to recover overtime due him under the FLSA by such claims, but, rather, in the event that the court determines that plaintiff is exempt from the wage and hour provisions of the FLSA, to recover the pay missing from his biweekly checks of September 25, 2009 and October 9, 2009, in which he was only paid for 72 hours of work, instead of 80.[104]

R.S. 23:631(A)(1)(a) requires the employer of an employee who resigns or is terminated to

> pay the amount then due under the terms of employment
> whether the employment is by hour, day, week, or month, on
> or before the next regular payday or not later than fifteen days
> following the date of discharge, whichever occurs first.

---

[102]La. R.S. 23:631, et seq.

[103]R. 25-2 at pp. 9-10.

[104]R. 31 at p. 10.

Under the express language of the LWPA, then, plaintiff must demonstrate the existence of an employment contract entitling him to eighty (80) hours of pay during the pay periods in which he claims he was shortchanged.[105] A plaintiff demonstrating an employer's arbitrary or otherwise egregious failure to timely pay wages due under the LWPA may be entitled to penalty wages and reasonable attorney fees.[106]

We agree with defendants that, to the extent that plaintiff seeks to recover overtime under both the FLSA and the LWPA, plaintiff's claims under the LWPA must be dismissed. We are convinced, however, that plaintiff's claim for payment of non-overtime hours to which he would be entitled, were the issue of his status under the FLSA decided in favor of defendants, would remain cognizable under the LWPA, provided plaintiff can meet the other elements of such state law claim.

## IV.   CONCLUSION

For the reasons stated above, the court finds that plaintiff's motion for summary judgment should be granted insofar as it seeks judgment declaring defendants' affirmative defenses of waiver and estoppel inapplicable in this case. Plaintiff's motion for summary judgment should be denied, however, as it pertains to defendants' affirmative defense of unclean hands, such that defendants should be allowed to offer evidence in support of this affirmative defense at the trial of this matter.

The court further finds that plaintiff's motion for summary judgment and defendants' motion for summary judgment should be each be denied insofar as they seek summary judgment declaring that the executive and administrative exemptions to the FLSA apply or do not apply in this

---

[105]Berard v. L-3 Communications Vertex Aerospace, LLC, 35 So.2d 334, 345 (La. App. 1 Cir. 2010) citing Schuyten v. Superior Sys., Inc., 952 So.2d 98, 102 (La. App. 1 Cir. 2006).

[106]La. R.S. 23:632.

case. The court bases its findings as to these exemptions on the existence of genuine disputes as to several fact issues as discussed above.

Additionally, the court finds that defendants' motion for summary judgment should be denied as it seeks judgment declaring that any overtime found to be due plaintiff in this case shall be compensated according to the fluctuating workweek method. On the contrary, for the reasons stated above, the court finds that the fluctuating workweek method is inapplicable in this case and, therefore, any overtime found to be due plaintiff at the conclusion of this matter shall be compensated at the rate of one and one-half times plaintiff's regular pay.

The court also finds, as discussed above, that defendants' motion for summary judgment dismissing plaintiff's claim for willful violation of the FLSA should be denied on the basis that questions of fact remain that, if decided in favor of plaintiff, would provide a reasonable basis for a finding of willful violation by the jury in this case.

Finally, the court finds that defendants' motion for summary judgment dismissing plaintiff's claims under the LWPA should be denied because plaintiff's claims under that state law provision are separate and distinct from his claims under the federal FLSA.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
April 10 , 2011

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE